IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JULIO RAMOS and EMMA                    Case No. 6:12-cv-00246-AA
ORTEGA BENITZ, husband                       OPINION AND ORDER
and wife,

       Plaintiffs,

   v.

WELLS FARGO BANK N.A.
and FIDELITY NATIONAL
INSURANCE COMPANY,

      Defendants.
_____

John A. Cochran
The Cochran Law Firm
3404 S.E. 45th Avenue
Portland, Oregon 97206
    Attorney for plaintiffs

Pilar C. French
Brian T. Kiolbasa
Lane Powell PC
601 S.W. 2nd Avenue, Suite 2100
Portland, Oregon 97204
    Attorneys for defendant
    Wells Fargo Bank N.A.

Page 1 - OPINION AND ORDER

Matthew R. Cleverley
Fidelity National Law Group
1200 6th Avenue, Suite 620
Seattle, Washington 98101
        Attorney for defendant
        Fidelity National Insurance Company

AIKEN, Chief Judge:

        Defendants Wells Fargo Bank N.A. ("WFB") and Fidelity National Insurance Company ("Fidelity") move to dismiss[1] plaintiffs Julio Ramos's and Emma Ortega Benitez's claims pursuant to Fed. R. Civ. P. 12(b)(6). For the reasons set forth below, defendants' motion is granted.

## BACKGROUND

        On August 18, 2008, plaintiffs took out a loan, in the amount of $161,905, from WFB in order to purchase a residential property in Salem, Oregon ("Property"). Pursuant to this transaction, plaintiffs executed a promissory note ("Note") in favor of WFB. The Note was secured by a deed of trust ("DOT"), which lists WFB as the lender and beneficiary. The DOT was duly recorded in Marion County, Oregon.[2]

---

        [1] On June 25, 2012, WFB filed a motion to dismiss; Fidelity filed a separate motion to dismiss on July 2, 2012. Because defendants make nearly identical arguments in favor of dismissal, and because Fidelity expressly joins in WFB's motion, the Court will address defendants' arguments as though they were raised in a single motion.

        [2] On April 11, 2012, this Court took judicial notice of the DOT, as well as the Appointment of Successor Trustee, Notice of Default and Election to Sell, and Trustee's Notice of Sale. Accordingly, the Court considers these documents pursuant to defendants' motion to dismiss.

Page 2 - OPINION AND ORDER

Pursuant to the DOT, plaintiffs agreed to make monthly mortgage payments as required under the Note. Plaintiffs also agreed that they would be in default, and subject to foreclosure, if they failed to make such payments. At some point after the loan was originated,[3] plaintiffs applied for a loan modification with WFB; this application was preliminarily approved. Nevertheless, WFB ultimately denied plaintiffs' loan modification application.

On December 1, 2010, plaintiffs stopped making the requisite mortgage repayments, thereby materially defaulting. On June 14, 2011, WFB appointed Fidelity as successor trustee. On August 26, 2011, Fidelity executed a Notice of Default and Election to Sell ("NODES") the Property. That same day, Fidelity prepared a Trustee's Notice of Sale, which scheduled the foreclosure sale for January 13, 2012. These documents were duly recorded in the official records of Marion County.

On January 11, 2012, plaintiffs filed a complaint in the Marion County Circuit Court; on February 10, 2012, defendants removed plaintiffs' case to this Court. On April 4, 2012, plaintiffs filed an amended complaint, alleging claims for: (1) improper accounting; (2) breach of contract; and (3) violations of the Fair Debt Collections Practices Act ("FDCPA"). Thereafter, the

---

[3] Plaintiffs allege that they applied for the loan modification in "January 2012." Am. Compl. ¶ 5.7. This date cannot be accurate, given that plaintiffs filed the present action in January 2012.

parties agreed to stay the foreclosure sale in light of the fact that plaintiffs received approval for a temporary forbearance while being evaluated for a loan modification; as such, a foreclosure sale has not yet occurred. Plaintiffs, however, failed to make the first repayment due under the temporary forbearance agreement, causing that agreement to be cancelled and this litigation to resume. Accordingly, defendants renewed their motion to dismiss; plaintiffs did not file an opposition to defendants' motion.

**STANDARDS**

Where the plaintiff "fails to state a claim upon which relief can be granted," the court must dismiss the action. Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, the complaint must allege "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). For the purposes of the motion to dismiss, the complaint is liberally construed in favor of the plaintiff and its allegations are taken as true. Rosen v. Walters, 719 F.2d 1422, 1424 (9th Cir. 1983). However, bare assertions that amount to nothing more than a "formulaic recitation of the elements" of a claim "are conclusory and not entitled to be assumed true." Ashcroft v. Iqbal, 556 U.S. 662, 680-81 (2009); see also Hogan v. N.W. Trust Servs., Inc., 2010 WL 1872945, *4 (D.Or. May 7, 2010), aff'd, 441 Fed.Appx. 490 (9th Cir. 2011) ("a court is free to ignore legal conclusions, unsupported conclusions, unwarranted

inferences and sweeping legal conclusions cast in the form of factual allegations"). Rather, to state a plausible claim for relief, the complaint "must contain sufficient allegations of underlying facts" to support its legal conclusions. <u>Starr v. Bacca</u>, 652 F.3d 1202, 1216, <u>reh'g en banc denied</u>, 659 F.3d 850 (9th Cir. 2011).

## DISCUSSION

As an initial matter, defendants argue that plaintiffs' equitable claims should be dismissed because plaintiffs are unable to cure the default. Defendants also contend that plaintiffs' claims fail both at the pleadings level and as a matter of law.

This Court finds the latter dispositive and therefore declines to address defendants' preliminary argument. Nonetheless, the Court agrees that, to the extent they are based in equity, plaintiffs' claims are precluded by their failure to allege an ability to cure the default. <u>See Hogan</u>, 2010 WL 1872945 at *5; <u>Stations W., LLC v. Pinnacle Bank of Or.</u>, 2007 WL 1219952, *6-7 (D.Or. Apr. 23, 2007), <u>aff'd in part</u>, 338 Fed.Appx. 658 (9th Cir. 2009).

## I. <u>Improper Accounting Claim</u>

In their first claim, plaintiffs seek a declaration that the NODES and Trustee's Notice of Sale are invalid because they misstate the amount due under the Note. Am. Compl. ¶¶ 6.2-6.6. Specifically, plaintiffs argue that defendants' actions are

wrongful because WFB "added in various fees and costs for their work to perform a loan modification from the initial loan amount . . . amounting to more than $15,359.31 [in charges]." Id. at ¶ 6.4.

Plaintiffs' claim is dismissed because it is conclusory and devoid of factual support. Plaintiffs do not identify a single payment or any alleged error in the amounts set forth in the NODES or Trustee's Notice of Sale; further, they do not enumerate the allegedly proper amount due under the loan. In other words, plaintiffs did not include sufficient allegations of underlying facts in support of their conclusion that the NODES and Trustee's Notice of Sale are unenforceable. This District has consistently dismissed improper accounting claims where, as here, plaintiffs fail to identify any inaccuracies in the NODES or Trustee's Notice of Sale. See Hernandez v. BAC Home Loan Servicing, LP, 2012 WL 1941745, *4 (D.Or. May 23, 2012); Thompson v. Bank of N.Y. Mellon, 2012 WL 1253203, *5 (D.Or. Apr. 12, 2012); Moreno v. Bank of Am., N.A., 2012 WL 1462338, *5-6 (D.Or. Apr. 27, 2012). Therefore, plaintiffs' improper accounting claim is dismissed.[4]

_____

[4] The NODES states that plaintiffs owe $9,998.72 for eight months of missed mortgage payments and late charges; it also states that the total sum owing is "$177,246.31 together with interest thereon of 4.75000% per annum" accruing as of December 2012, the date of the default, plus other charges. See Kiolbasa Decl. Ex. 3, at 1. As such, plaintiffs' assertion that they were improperly charged $15,359.31 for the unsuccessful loan modification and, additionally, that the NODES was defective by not accounting for all their alleged payments, is contradicted by the record. For this additional reason, their first claim is dismissed. See, e.g., Moreno, 2012 WL 1462338 at *6.

II.  <u>Breach of Contract Claim</u>

Plaintiffs next allege that defendants breached the parties oral and written agreement for a loan modification. Plaintiffs assert five different theories of liability under this claim: (1) promissory estoppel and unjust enrichment[5]; (2) breach of fiduciary duty; (3) unconscionability; (4) rescission; and (5) breach of good faith and fair dealing. <u>See</u> Am. Compl. ¶¶ 7.1-7.30.

A.    <u>Promissory Estoppel and Unjust Enrichment</u>

Plaintiffs contend that WFB "promised both orally and in writing that [they] received final approval for [a] loan modification," which they relied on to their detriment. Am. Compl. ¶¶ 7.2-7.7. In addition, plaintiffs assert that defendants were unjustly enriched because plaintiffs did not understand the terms and cost of the parties' loan agreements. <u>Id.</u> at ¶ 7.7.

i.    <u>Promissory Estoppel</u>

In order to state a claim for promissory estoppel, plaintiff must first allege that a promise was made. <u>Rick Franklin Corp. v. State ex. rel. Dep't of Transp.</u>, 207 Or.App. 183, 190, 140 P.3d 1136, <u>rev. denied</u>, 342 Or. 116, 149 P.3d 138 (2006) (citation omitted); <u>Barnes v. Yahoo! Inc.</u>, 570 F.3d 1096, 1106 (9th Cir. 2009) (citation omitted). Under Oregon law, "any promise which is

---

[5] Plaintiffs also allege a "count" for detrimental reliance; however, detrimental reliance is an element of a promissory estoppel claim and not a separate cause of action. <u>See Rick Franklin</u>, 207 Or.App. at 190.

to serve as the basis for a promissory estoppel claim [must] be as clear and well defined as a promise that could serve as an offer, or that otherwise might be sufficient to give rise to a traditional contract supported by consideration." Barnes, 570 F.3d at 1106 (citations omitted).

Plaintiffs' promissory estoppel claim is dismissed for two reasons. First, plaintiffs do not denote any clear and well-defined promise that could reasonably be considered an offer or otherwise support the creation of a contract. Notably, plaintiffs fail to identify the speaker, date, or context of the alleged oral promises. Further, plaintiffs do not attach the alleged written promises to their complaint or otherwise describe their contents. Without such information, however, plaintiffs are unable to state a claim for promissory estoppel. See, e.g., Baringa v. JP Morgan Chase & Co., 749 F.Supp.2d 1164, 1176-77 (D.Or. 2010).

Second, while not determinative, plaintiffs' claim fails even assuming the existence of a promise. It is undisputed that, because plaintiffs were unable to make the requisite loan repayments, they applied for and WFB ultimately provided a loan modification, and stayed both the pending foreclosure and this lawsuit. Because plaintiffs failed to even make the revised payments due under the parties' temporary forbearance agreement, the loan modification was cancelled. Under these circumstances, plaintiffs cannot state a claim for promissory estoppel.

Page 8 - OPINION AND ORDER

ii.   Unjust Enrichment

To state a claim for unjust enrichment, plaintiff must allege that: "(1) plaintiff conferred a benefit on defendant; (2) defendant was aware that it had received a benefit; and (3) under the circumstances it would be unjust for defendant to retain the benefit without paying for it." Volt Servs. Grp., Div. of Volt Mgmt. Corp. v. Adecco Emp't Servs., Inc., 178 Or.App. 121, 133, 35 P.3d 329 (2001), rev. denied, 333 Or. 567, 42 P.3d 1246 (2002) (citation omitted); see also L.S. Henriksen Constr., Inc. v. Shea, 155 Or.App. 156, 159, 961 P.2d 295, rev. denied, 328 Or. 40, 977 P.2d 1170 (1998) ("a complaint must contain allegations that the 'enrichment' was 'unjust'").

Here, plaintiffs have not alleged, nor can they, that they conferred a benefit on defendants arising out of the requested loan modification; in addition, plaintiffs do not explain how defendants' alleged enrichment was unjust. Rather, the only payments received from WFB were those that plaintiffs contractually agreed to pay. Moreover, "confusion over the terms of [the] loan agreements do not make a theory for recovery under a theory of unjust enrichment." Stewart v. Mortg. Elec. Registration Sys., Inc., 2010 WL 1055131, *11 (D.Or. Feb. 9), adopted by 2010 WL 1054775 (D.Or. Mar. 19, 2010). Therefore, defendants' motion is granted as to plaintiffs' promissory estoppel and unjust enrichment claims.

B.    Breach of Fiduciary Duty

Plaintiffs contend that WFB "owed a fiduciary duty to Plaintiffs and breached that duty by failing to advise or notify Plaintiff when Defendant knew or should have known that Plaintiff would have a likelihood of defaulting on the loan." Am. Compl. ¶ 7.9.

In addition to failing at the pleading level, plaintiffs' claim fails as a matter of law.  It is well-settled under Oregon law that lenders do not have a fiduciary duty towards borrowers. Hogan, 2010 WL 1872945 at *9; see also Uptown Heights Assocs. Ltd. P'ship v. Seafirst Corp., 320 Or. 638, 650, 891 P.2d 639 (1995). In other words, "a purchaser must use reasonable care for his own protection and cannot rely blindly on a seller's statements but, must make use of his means of knowledge and failing to do so, cannot claim that he was misled." Hogan, 2010 WL 1872945 at *9. Accordingly, defendants' motion is granted and plaintiffs' breach of fiduciary duty claim is dismissed.

C.    Unconscionability

Plaintiffs assert that the Note and DOT are unconscionable because WFB failed "to provide a loan that Plaintiffs' could pay." Am. Compl. ¶¶ 7.15-7.17.  As a result, plaintiffs contend that these instruments are void.

Plaintiffs' unconscionability claim similarly fails at the pleadings level and as a matter of law.  Unconscionability is not

Page 10 - OPINION AND ORDER

a valid cause of action where the sale of real estate is involved. See Hogan, 2010 WL 1872945 at *9-10 (citing Best v. U.S. Nat'l Bank of Or., 78 Or.App. 1, 10, 714 P.2d 1049 (1986), aff'd, 303 Or. 557, 739 P.2d 554 (1987)); Stewart, 2010 WL 1055131 at *11; Whitus v. Countrywide Mortg., Inc., 2004 WL 2165362, *4 (D.Or. Sept. 24), adopted by 2004 WL 2287767 (D.Or. Oct. 6, 2004). Thus, defendants' motion is granted as to plaintiffs' unconscionability claim.

   D.   Rescission

   Plaintiffs' claim for rescission alleges that WFB failed to provide the initial disclosures required by the Truth in Lending Act ("TILA"). See Am. Compl. ¶¶ 7.19-7.20. As such, plaintiffs' claim for rescission arises out of TILA violations rather than any breach of the parties' contracts.

   TILA contains a one-year statute of limitations and a three year statute of repose. See 15 U.S.C. §§ 1635(f), 1640(e). Accordingly, a claim for rescission under TILA must be brought no more than three years after the date the loan documents were signed. See Miguel v. Country Funding Corp., 309 F.3d 1161, 1164-65 (9th Cir. 2002), cert. denied, 539 U.S. 927 (2003); Meyer v. Ameriquest Mortg. Co., 342 F.3d 899, 902 (9th Cir. 2003).

   Here, plaintiffs executed their loan documents on August 18, 2008. On January 11, 2012, more than three years after plaintiffs' loan closed, this lawsuit was commended. Therefore, plaintiffs' rescission claim is time-barred and defendants' motion is granted.

Page 11 - OPINION AND ORDER

E.   Breach of Good Faith and Fair Dealing

Plaintiffs contend that WFB breached its contractual duty of good faith and fair dealing by "willfully" withholding "numerous disclosures [and] notices," and by "[w]illfully plac[ing] Plaintiffs in a loan that they did not qualify for, could not afford, and subjected them to further financial detriment." Am. Compl. ¶¶ 7.25-7.30.

The covenant of good faith and fair dealing protects the objectively reasonable contractual expectations of the parties. Uptown Heights, 320 Or. at 645.   This duty, however, "cannot contradict an express contractual term nor does it provide a remedy for an act (even one as admittedly unpleasant as foreclosure), that is expressly permitted by the terms of the contract." Hogan, 2010 WL 1872945 at *6 (citation omitted); see also Uptown Heights, 320 Or. at 645.

Here, plaintiffs' agreed, under the explicit terms of their loan contracts, that they would be subject to foreclosure if they failed to make the requisite monthly loan repayments. Defendants' enforcement of these terms upon plaintiffs' material default is therefore not actionable. See, e.g., Hogan, 2010 WL 1872945 at *6 (dismissing an identical breach of good faith and fair dealing claim).   Accordingly, plaintiffs fail to state a claim for breach of the implied covenant of good faith and fairing dealing. Defendants' motion is granted as to plaintiffs' second claim.

Page 12 - OPINION AND ORDER

III. <u>FDCPA Claim</u>

In their final claim, plaintiffs allege that defendants violated the FDCPA by seeking to collect a debt because: (1) the Notice of Default and Election to Sell is inaccurate; (2) WFB "steadfastly refused to accept Plaintiffs' loan modification paperwork for no legally justified reason;" and (3) defendants did not stop their efforts to collect the debt, despite plaintiffs' request that they cease such efforts. Am. Compl. ¶¶ 9.3-9.5.

Plaintiffs' third claim is dismissed for three reasons. First, plaintiffs fail to allege any facts to support their legal conclusions. Second, WFB is not a debt collector within the meaning of the FDCPA. The FDCPA defines "debt collector" as one "who regularly collects, or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). Here, it is undisputed that WFB is both the party that originated plaintiffs' loan and the party that is seeking repayment of that loan. Accordingly, because WFB is not attempting to collect a debt owed to a third-party, the FDCPA does not apply. <u>See, e.g.</u>, <u>Corrinet v. Wells Fargo Bank-Nat'l Ass'n</u>, 2011 WL 3798795, *4-5 (D.Or. Aug. 25, 2011).

Finally, plaintiffs do not allege that defendants engaged in any actions beyond those reasonably necessary to effectuate the foreclosure of the Property. Because the collection of a debt is ordinarily not the object of foreclosure, "any action taken in

pursuit of actual foreclosure may not be challenged as a violation of the FDCPA." <u>Memmott v. OneWest Bank</u>, 2011 WL 1560985, *9 (D.Or. Feb. 9), <u>adopted as modified by</u> 2011 WL 1559298 (D.Or. Apr. 25, 2011) (discussing <u>Hulse v. Ocwen Fed. Bank, FSB</u>, 195 F.Supp.2d 1188 (D.Or. 2002)); <u>Corrinet</u>, 2011 WL 3798795 at *4-5. Accordingly, to state a viable FDCPA claim, "plaintiff must allege sufficient facts to demonstrate that [defendants] engaged in conduct beyond that actually necessary to foreclose on her loans." <u>Memmott</u>, 2011 WL 1560985 at *12. As such, even assuming that defendants are debt collectors such that their actions fall within the purview of the FDCPA, plaintiffs' claim nonetheless fails because they did not assert any actions beyond those required to foreclose. Therefore, plaintiffs' FDCPA claim is dismissed.

## CONCLUSION

Defendants' motions to dismiss (docs. 23, 26) are GRANTED. Accordingly, defendants' requests for oral argument are DENIED as unnecessary. This case is DISMISSED.

IT IS SO ORDERED.

Dated this 5th day of October 2012.


_____
            Ann Aiken
   United States District Judge